**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GAMON PLUS, INC., et al., | |
| Plaintiffs, | CASE NO. 1:15-CV-08940 |
| v. | JUDGE JOHN ROBERT BLAKEY |
| CAMPBELL SOUP COMPANY, et al., | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO SERVE JOEL A. BRODSKY A SUBPOENA FOR DOCUMENTS (DKT. 321)

### INTRODUCTION

Plaintiffs Gamon Plus, Inc. and Gamon International, Inc. (collectively, "Plaintiffs" or "Gamon") hereby oppose Defendants' Motion for Leave to Serve Joel A. Brodsky a Subpoena for Documents (Dkt. 321, hereinafter, the "Motion"). As an initial matter, Defendants' request is too little too late. That Brodsky was formerly co-counsel for Plaintiffs is no secret but rather has been known since virtually the inception of this case. Defendants nevertheless did not seek his deposition, and have only sought documents at the eleventh hour.

Further, Defendants' request is an untimely fishing expedition. Brodsky is known to be untrustworthy and Plaintiffs are hard pressed to think of any document that would be in his possession that impacts the merits of this case. Indeed, in response to numerous requests to Brodsky's counsel, Plaintiffs were told that all documents were provided to litigation counsel. And, any such documents are likely privileged such that even if this Court considers granting this Motion, the documents should be provided to, and only to, Defendants ***so as to avoid a forced waiver of privilege***. For these reasons, and as discussed in more detail below, Defendants' Motion should be denied.

I.    **THE SUBPOENA SEEKS DOCUMENTS THAT ARE DUPLICATIVE OF THE MATERIALS ALREADY PRODUCED IN THE CASE.**

   A.    **Brodsky and His Counsel Confirmed that He Provided Copies of All Relevant Materials in His Possession to Gamon's Former Counsel.**

Duplicative discovery is no basis for serving an out-of-time subpoena to Gamon's former counsel. "[A] non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *7 (N.D. Ill. Apr. 22, 2020) (citation omitted). In fact, the Court may "quash or modify a subpoena if it seeks discovery that is 'unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive[.]'" *Tresóna Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015) (quoting Fed. R. Civ. P. 26(b)(2)). Such is the case here.

Defendant's Motion is based solely upon the contrived notion that Brodsky has additional documentation relevant to this action and that such documents were never provided to Gamon's current counsel or ultimately produced in this action. (*See* Dkt. 322 at 5-6.) Specifically, Defendants cite to several unilateral assertions that Brodsky made to their counsel in October 2022, whereby he claimed to have retained relevant documents, that he provided to Gamon's subsequent counsel, Niro McAndrews, LLC ("Niro"), but that, according to Brodsky, Niro "likely had lost, destroyed or failed to turn over relevant and responsive documents to Gamon's current counsel." (*Id*. at 6.) Notably, however, neither Defendants nor Brodsky provide any explanation as to how he could possibly know whether Niro lost or destroyed Gamon's documents, let alone failed to turn such documents over to Gamon's current counsel.

Rather, on December 1, 2022, Brodsky confirmed that the intended subpoena is unnecessary and duplicative. (*See* Exhibit A to the Declaration of Cristina Q. Almendarez (the "Almendarez Decl.", filed concurrently herewith.) Specifically, Brodsky stated to Gamon's current counsel, Benesch Friedlander Coplan and Aronoff LLP that Niro (Gamon's former counsel who replaced Mr. Brodsky) was "given everything I have from my representation of Gamon, and I only have copies of those materials in my possession, which are mostly in electronic format." (*See id.* at 1.) This has been Brodsky's position for months. For instance, on October 3, 2022, Brodsky's counsel confirmed that

his client "transferred to Niro McAndrews all files in his possession related to Mr. Brodsky's representation of Gamon." (*See* Almendarez Decl. at Ex. B (October 3, 2022 B. Montgomery Email at 1.))

Still more troubling, Defendants have expressed an open disregard for creating duplicative discovery. In a letter to Gamon's current counsel, dated November 29, 2022, Defendants asked Gamon to collect Brodsky's documents for them and then produce the documents "without de-duping against Gamon's prior productions." (*See* Almendarez Decl. at Ex. C (November 29, 2022 M. Goracke Letter at 2.)) This request, coupled with the more recent statements made by Brodsky and his counsel, refutes the notion that Brodsky has additional relevant documents to produce in this action and confirms Defendants' apathy for creating unnecessary discovery at Gamon's time and expense. Serving Brodsky with a subpoena now, months after the close of discovery, would only result in duplicative discovery. *See Ameritox, Ltd. v. Millennium Labs, Inc*., No. 12–cv–7493, 2012 WL 6568226, at *2–3 (N.D. Ill. Dec. 14, 2012) (granting a motion to quash nonparty subpoenas "because the requests are cumulative and duplicative of discovery requests made to the party to the litigation"). Defendants' Motion should, therefore, be denied on this basis alone.

### B. Niro Transferred All of Its Files to Gamon's Current Counsel.

Other than Brodsky's inconsistent statements, which were made solely to Defendants' counsel, Defendants present no reason to doubt that Niro provided all relevant information and documents to Gamon's current counsel years ago. In fact, Niro has confirmed the opposite. In a letter, dated January 16, 2020, Niro confirmed its agreement to provide all relevant information to Gamon's current counsel. (*See* Almendarez Decl. at Ex. D (January 16, 2020 Redacted M. McAndrews Letter at 1.)) Specifically, Niro wrote, "[p]ursuant to Mr. Johnson's [*sic*] request, this also confirms that we will transfer to your firm as soon as reasonably practical all files and things relating to the Chicago Action." (*Id*.)

### C. There Is No Basis for Brodsky's Allegations that Niro *Might* Have Destroyed or Otherwise Failed to Provide Relevant Information to Plaintiffs' Current Counsel.

Defendants' Motion relies entirely on the contradicted and unsubstantiated claims from Brodsky, Gamon's disgruntled and previously terminated attorney, without providing any evidence to support his allegations. (*See* Dkt. 322 at 5-6; *see also* Quinn Decl., Dkt. 324 at ¶¶12-13.) Defendants

provide no reason to doubt Niro's confirmation otherwise, (*see* Ex. D), nor any reason to doubt Niro's competency in maintaining his files and the documents he received from Gamon or Brodsky. In fact, Defendants decline to take a firm position "as to the veracity of Mr. Brodsky's claim that Niro McAndrews lost, withheld or destroyed relevant documents." (Dkt. 322 at 10, n. 5.) Neither Defendants' Motion, its counsel's declaration, nor the cited statements from Brodsky himself, provide a scintilla of evidence that Niro ever mismanaged, lost, or purposefully destroyed this information. Yet, Defendants would rather cause Gamon, and ultimately the Court, to expend time and resources in an effort to substantiate this claim for them. By filing their Motion, Defendants display a complete lack of regard for the case schedule, judicial economy, or the burden to Gamon, not to mention Niro's professional reputation, without any actual evidence. And the purported urgency that Defendants raise because Brodsky expressed plans to move out of the country in 2023 appear now to be moot.[1] (*See* Dkt. 322 at 6.)

Thus, Defendants fail to present a single valid basis for serving a subpoena to Brodsky, no matter where he decides to live. Their Motion should be denied.

## II.    THE SUBPOENA IS UNTIMELY AND THERE IS NO REASONABLE EXCUSE FOR DEFENDANTS' DELAY IN SEEKING IT.

### A.    Defendants Could Have Sought to Subpoena Mr. Brodsky While Fact Discovery Was Open.

Although the Motion should be denied as it seeks duplicative discovery on its face; the Motion should be denied for the separate reason that Defendants' request to subpoena Brodsky is untimely. Defendants could have, but ultimately chose not to serve a subpoena on Brodsky before fact discovery ended. The Court is well within its power to reject a subpoena such as the one Defendants propose, if "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought." *Tresóna Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015) (citation and quotations omitted). Hence, Defendants' Motion should also be denied for the subpoena is untimely.

---

[1] Notably, Brodsky has strived to intervene in this action since at least May 2022, *see* Section III.A, *infra*, indicating Brodsky's availability despite his planned emigration. More recently, Brodsky wrote to the Court on December 24, 2022 and again on January 11, 2023.

Fact discovery closed on June 15, 2022, but Brodsky began representing Gamon in this case when it was first filed. He entered his appearance on October 9, 2015. (*See* Dkt. 11.) Defendants' counsel were thus aware of his involvement early on in the case. For instance, counsel for Defendant Trinity Manufacturing, LLC ("Trinity"), who originally represented Defendants Campbell Soup Co. ("Campbell"), Kroger Co. ("Kroger"), and Meijer Inc. ("Meijer"), entered his own appearance just two months later, on December 8, 2015. (*See* Dkt. 23, Appearance of Atty. Martin Pavane). Current counsel for Campbell, Kroger and Meijer also appeared several years before the close of fact discovery. (*See* Dkts. 107, Appearance of Atty. Tracy Quinn, dated June 20, 2018 and 118 Appearance of Atty. Steven Jedlinski, dated November 20, 2018). Defendants' counsel, thus, had notice from the docket, which lists Brodsky as Gamon's former counsel as well as his removal from the case.

Moreover, Defendants' prior discovery tactics show that they could have issued the Subpoena to Brodsky sooner, and well before the close of fact discovery. Defendants already issued a subpoena to one of Gamon's former attorneys, although that was prior to the close of discovery. Specifically, on September 10, 2021, Defendants issued a subpoena to Vedder Price, Gamon's former prosecution counsel. (*See* Almendarez Decl. at Ex. E (September 10, 2021 Subpoena to Vedder Price).) Having issued the Vedder Price subpoena nine months before the close of discovery, Defendants gave Gamon sufficient time to review and produce responsive materials, even though most, if not all, were duplicative of what Gamon had already produced in the case. In contrast, here, Defendants provide no substantiated reason for their delay in seeking to subpoena Brodsky until more than six months after discovery closed. *See Park v. Dundee Mkt. III, Inc*., No. 14-cv-1541, 2016 WL 427504, at *2 (N.D. Ill. Feb. 3, 2016) (rejecting subpoena because the issuing parties "provide no reason why they delayed until after the close of discovery to issue these subpoenas"). The Motion should therefore be denied.

### B. The Overburdensome Relief Defendants Request in their Motion Is Not Commensurate to the Even More Burdensome Relief They Really Seek.

Gamon is left with no choice but to oppose Defendants' Motion. The alternative would require Gamon to incur great expense, having to cater to Defendants' unreasonable and untimely discovery demands. This is shown in the November 29, 2022 letter from Defendants' counsel, proposing an alternative to issuing the subpoena to Brodsky. (Ex. C at 2.) Specifically, Defendants offered to

withdraw their Motion, in exchange for the following list of demands:

(1) confirmation that Mr. Brodsky has transferred his documents into Benesch's control;

(2) Gamon will identify the total number of documents that Mr. Brodsky transferred in connection with its production (including an identification of the number of parent documents and attachments/family members);

(3) Gamon will log all documents transferred from Mr. Brodsky that Gamon withholds from production in whole or in part for any reason (whether on the basis of an alleged privilege or otherwise) on a separate log (not just documents created prior to the filing of the Complaint);

(4) Gamon will produce all responsive, non-privileged documents, without de-duping against Gamon's prior productions, under a new bates prefix (e.g., "BROD"); and

(5) Gamon will provide a date certain by which it will provide each of the items set forth in the foregoing paragraphs (2) – (4).

(*Id*.) This letter confirms Defendants' intent to create extra work for Gamon, even though it is duplicative, *see* Section I.A., *supra*, and fact discovery has been closed for half a year. *See* Section II.A, *supra*.

Nevertheless, if the Court grants Defendants' Motion, even without the lengthy list of demands Defendants propose, the result would still be overly burdensome for Gamon. Because Gamon's right to attorney-client privilege and attorney word product must be adequately protected, to the extent that Brodsky is ordered to produce documents in response to Defendants' subpoena, such documents must first be provided to Gamon's current counsel for privilege review. Such an undertaking would be unduly burdensome given the purported benefit and the lack of substantiation that such discovery is non-duplicative. "[A] court on its own authority may limit discovery if it determines," *inter alia*, that "the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." *Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2008 WL 7506560, at *3 (N.D. Ill. Jan. 7, 2008) (quoting Fed. R. Civ. P. 26(b)(1)). Here, the balance weighs strongly in favor of denying Defendants' Motion.

Accordingly, the Court should deny Defendants' Motion to avoid an otherwise unwarranted burden to Gamon.

## III. BRODSKY'S DESIRE TO INSERT HIMSELF INTO THIS LITIGATION MAKES HIS REPRESENTATIONS TO DEFENDANTS DUBIOUS AT BEST.

### A. Brodsky's Representations Conflict with His Actions.

According to Defendants, Brodsky believes he has "material documents in his possession to this lawsuit that he believes were never obtained by Plaintiffs' current counsel." (Dkt. 322 at 2.) Yet, Gamon has repeatedly requested these documents from both Brodsky's counsel and Brodsky himself. (*See* Ex. B at 1-2; Ex. A at 1-2.) However, rather than produce those documents to Gamon directly, and despite the direct contradiction in his recent correspondence, *see* Section I.A., *supra*, he has refused to produce the purported additional documents directly to Gamon. (*See* Ex. A at 1, "It is not my job to make sure that Niro McAndrews gave everything they had to your firm; nor is it my problem if they did not."). Thus, Brodsky's story about the documents has changed multiple times. While Defendants appear susceptible to Brodsky's unsubstantiated claims, Gamon is not willing to entertain them, and nor should this Court.

Relatedly, there is no dispute that Brodsky considers himself to have an interest in this action, and there is no telling what he might do or say to assert it. Brodsky began his attempt to intervene in this case in May 2022, (*see*, *e.g.*, Dkts. 262-68; 270; 276; 283-87; 306-08), which Gamon and Defendants have both opposed. (*See* Dkts. 298, 303.) Before that, however, Brodksy represented Gamon in this action, until he was eventually terminated from that representation on February 19, 2016. (*See* Dkt. 66.) A few years later he was disbarred from the practice of law.[2] Brodsky has also already attempted to assert his purported claims against Gamon to recover referral fees, but that action was deemed premature. (*See* Dkt. 303 at 1.) Now, Brodsky reasserts those claims in this action, for, as Defendants note in their Motion, he feels entitled to some of Gamon's recovery. (*See* Dkt. 322 at 2, discussing Brodsky's "flurry of filings" in 2022, seeking "to intervene in this case to protect what he considers to be his interest in any prospective Gamon recovery").

Brodsky therefore appears to have an interest in using the subpoena process to force a discussion with Gamon and presumably gain leverage for settlement of his claim for fees, as his own communications directly suggest. (*See* Almendarez Decl. at Ex. F (December 7, 2022 Email from J.

---

[2] *See* https://chicago.suntimes.com/2019/6/19/18692147/joel-brodsky-former-attorney-drew-peterson-barred-from-practicing-law-state-supreme-court.

Brodsky at 1, "Also, I just emailed Mr. Loshl and cc'd you on that email. Did you read everything I wrote in that email? Are you beginning to understand? Are you sure you don't want to speak with me?".) Brodsky's backdoor attempt to insert himself in this litigation should not be entertained, nor should his self-serving and contradictory statements about what documents he might possess be credited. He has already moved to intervene, and while that request remains pending, so too should his further impact on this litigation.

**B.**     **Brodsky Should Not Be Permitted to Make Assessments of Privilege or Relevance Regarding Gamon's Documents.**

If the Court grants Defendants' Motion, which it should not, Gamon should have the sole right to review the same for relevance and privilege, prior to any sort of subpoena production. Without such safeguards, production of any documents a privilege review by Gamon's current counsel is needed to avoid a forced waiver of privilege. This is a particular concern here. The documents sought are from Gamon's former counsel from when he was acting as Gamon's counsel, and thus likely to be privileged.

Moreover, as mentioned above, Brodsky was disciplined for violating attorney-client privilege, and was eventually barred from the practice of law. *See In re Joel Alan Brodsky*, No. M.R.030470, 2018PR00064 (ARDC Sup. Ct. Ill., Order, dated November 13, 2020). He is also no longer Gamon's attorney. He is thus in no position to make assessments as to whether the documents in his possession are privileged. Rather, given his pending motion to intervene, Brodsky not only has an incentive to mispresent the existence and/or relevance of the additional documents he purports to possess, but also to misrepresent that those documents are not privileged. With his personal interest openly averse to Gamon, and the potential for improper designation of privilege, the only safeguard to protecting Gamon's right to privilege is for documents to be turned over to Gamon's current counsel for review.

**CONCLUSION**

For all the reasons stated above, Defendants' Motion for Leave to Serve Joel A. Brodsky a Subpoena for Documents (Dkt. 321) should be denied.

Dated: <u>January 18, 2023</u>                     Respectfully submitted,


By:  *Cristina Q. Almendarez*
    Kal K. Shah
    Mircea A. Tipescu
    Cristina Q. Almendarez
    Theresa L. Starck
    Louis Constantinou
    **BENESCH, FRIEDLANDER,**
    **COPLAN & ARONOFF LLP**
    71 South Wacker Drive, Suite 1600
    Chicago, Illinois 60606-4637
    Telephone:  312.212.4949
    Facsimile:  312.767.9192
    kshah@beneschlaw.com
    mtipescu@beneschlaw.com
    calmendarez@beneschlaw.com
    tstarck@beneschlaw.com
    lconstantinou@beneschlaw.com

    *Attorneys for Gamon Plus, Inc. and*
    *Gamon International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2023 the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

_Cristina Q. Almendarez_
*One of the attorneys for Gamon Plus, Inc. and*
*Gamon International, Inc.*