**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMON PLUS, INC., et al., | ) | |
| | ) | Case No. 15-cv-8940 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| CAMPBELL SOUP COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The parties in this patent infringement case dispute certain claim terms in the asserted patents, and the case is before the Court on claim construction. After reviewing the parties' briefs and submissions on claim construction, as well as each of the patents (including the claims, the specification, and the prosecution history in the record), and after hearing from the parties at the claim construction hearing, the Court herein sets forth its findings and conclusions concerning claim construction.

**A.    Background & Procedural History**

**1.    The Parties, Patents, and Claims**

Plaintiffs Gamon Plus, Inc. and Gamon International, Inc. (together, "Plaintiffs") design and produce specialty packaging and point-of-purchase displays. Gamon Plus owns U.S. Utility Patent No. 8,827,111 (the '111 Patent) and U.S. Utility Patent No. 9,144,326 (the '326 Patent), both titled "Multi-chute Gravity Feed Dispenser Display." Gamon Plus has owned the '111 and '326 Patents since prior to October 8, 2015, and Gamon International is the exclusive licensee of the '111 and

'326 Patents since prior to October 8, 2015.

The '111 Patent, issued September 9, 2014, discloses 35 claims, only four of which are at issue today: claims 17, 18, 27, and 28 (17 is an independent claim; 18 depends from 17; 27 is an independent claim; and 28 depends from 27).[1] The background of the invention section of the specification indicates that the "present invention relates to dispenser racks and displays therefore, and more particularly, to a compact, easy to assemble, easy to load and unload multiple chute dispenser with an integrated display," '111 Patent [275-1] at 30. The specification acknowledges that gravity feed dispensers have been used in product markets "to provide on-shelf storage, automatic rotation of stock, easy access for customers," but claims disadvantages with prior art exist, including that they are "integrated into racks" and "not designed to be used in connection with standard shelving in place at the retailer"; they have to be loaded from the back or top; and they preclude customers from returning unwanted product. *Id.* Thus, the specification explains, "there remains a need in the art for a compact, easy to assemble, easy to load and reload multi-chute gravity feed dispenser having an integrated display." *Id.* The "brief summary of the invention" section of the specification describes: "a set of panels having chutes therebetween. The chutes being defined by curvilinear rails on such panels. The curvilinear rails having stops thereon for stopping the products for viewing." *Id.*

The '326 Patent, issued September 29, 2015, discloses 23 claims, 5 of which are directly at issue today: claims 1, 3, 9, 12, and 17 (claim 1 is independent; claim 3

---

[1] As a result of inter partes review proceedings, claims 1 through 16 of the '111 were canceled; claims 27, 28, 32–35 were found patentable, *see* [275-1] at 43.

depends from claim 2, which in turn depends from claim 1; claims 9 and 12 depend from claim 1, and claim 17 depends from claim 9, which in turn depends from claim 1). As above, the specification acknowledges that "gravity feed dispensers have been used in the product dispensing markets, i.e., grocery stores, supermarkets, etc. to provide on shelf storage, automatic rotation of stock, easy access for customers," but notes several disadvantages of prior art dispensers. For example, they are "not designed to be used in connection with standard shelving already in place at the retailer"; do not allow customers to restock unwanted product; and they have to be reloaded from the back or topside. *See* [275-3] at 30. Thus, the specification notes, "there remains a need in the art for a compact, easy to assemble, easy to load and reload multi-chute gravity feed dispenser having an integrated display." *Id.* The "brief summary of the invention" describes "a set of panels having chutes therebetween. The chutes being defined by curvilinear rails on such panels. The curvilinear rails having stops thereon for stopping the products for viewing." *Id.* In these respects, the patents are identical.

In this infringement suit, Plaintiffs sue Defendants Campbell Soup Company (which makes and sells Campbell Soup, Prego, and Pepperidge Farm brands, among others); Meijer, Inc. and the Kroger Co. (which sell those brands in retail markets); and Trinity Manufacturing (which, like Gamon, designs and produces specialty packaging and point-of-purchase displays). Gamon competes with Trinity in the product display industry and formerly supplied display racks to Campbell, Meijer, and Kroger.

3

The operative complaint, which is the Second Amended Complaint [275], alleges:  infringement of the '111 patent by Campbell (count I), Trinity (count II), Kroger (count III), and Meijer (count IV); and infringement of the '326 patent by Campbell (count V), Trinity (count VI), Kroger (count VII), and Meijer (count VIII). Plaintiffs joined Defendants in a single suit under 35 U.S.C. § 299 because, among other things, all of the Defendants participate in the production of the allegedly infringing product line of dispensers, referred to as the "IQ Maximizer Group 1 Dispenser" based upon the shape of the lower product stop.  Plaintiffs claim the hard plastic portions and Campbell's themed labeling of the IQ Maximizer Group 1 Dispenser appear to be created by Campbell's and Trinity, while Kroger and Meijer both reconfigure, modify, and rebrand the IQ Maximizer Group 1 Dispensers to sell their private label lines of soup cans.

In particular, Plaintiffs allege that: Campbell willfully infringed at least: (1) claims 17–19, 24, 25, 27, 28, 33, and 35 of the '111 patent under 35 U.S.C. § 271(a-c); and (2) claims 1–3, 9, 10, 12, and 15–17 of the '326 patent under 35 U.S.C. § 271(a-c); Trinity willfully infringed at least: (1) claims 17–19, 24, 25, 27, 28, 33, and 35 of the '111 patent under 35 U.S.C. § 271(b-c), and (2) claims 1–3, 9, 10, 12, and 15–17 of the '326 patent under 35 U.S.C. § 271(b-c); and Meijer and Kroger infringed at least: (1) claims 17–19, 24, 25, 27, 28, 33, and 35 '111 patent under 35 U.S.C. § 271(a), and (2) claims 1–3, 9, 10, 12, and 15–17 of the '326 patent under 35 U.S.C. § 271(a).[2]

---

[2] Plaintiffs initially asserted six patents in this lawsuit; four of the asserted patents were invalidated during proceedings before the U.S. Patent Trial and Appeal Board, however, and Plaintiffs voluntarily canceled certain of the remaining claims from the '111 patent; during proceedings before the PTAB, this case remained stayed by agreement from November 4, 2016 through July 2021.

In response to the operative complaint, all four defendants answered and filed counterclaims, seeking declaratory judgments that both patents are invalid and not infringed. *See* [290] (Campbell); [291] (Kroger); [292] (Meijer); [293] (Trinity).[3]

## 2. Disputed Claim Terms & The Parties' Proposed Constructions

The parties submitted a joint claim construction chart [260], indicating that they dispute 8 claim terms, as follows:

| Claim Term | '111 claims | '326 claims | Plaintiffs' proposed construction | Defendants' proposed construction |
|---|---|---|---|---|
| "a plurality of generally cylindrical products all having substantially equal diameters" | 17, 27 | 1 | Plain and ordinary meaning, no further construction necessary. | Plain and ordinary meaning, but construed as: "a plurality of products having a shape of or relating to a cylinder where each of the products has approximately the same outer diameter" |
| "adjacent" | 17, 27 | 1, 3, 12, 17 | Plain and ordinary meaning, no further construction necessary. | Plain and ordinary meaning, but construed as: "next to or near" |
| "the stop structure of said second chute being disposed above the dispensing opening of said first chute a vertical distance and offset rearwardly from the stop structure of said first chute a horizontal distance greater than the diameter of the products such that a forwardmost product of the products in the first chute can only be properly removed from the first chute, by lifting said forwardmost product up to a level wherein the forwardmost product is at least in part horizontally forward of the dispensing opening of the second chute" | 17 | | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017).<br><br>Plaintiffs also submit that the phrase "properly removed" should be construed according to its plain and ordinary meaning (i.e., by lifting said forwardmost product up to a level wherein the forwardmost product is at least in part | Indefinite (which would also make dependent claims 18, 19, 24, and 25 indefinite as well).<br><br>Defendants submit that the entire clause is indefinite as an improper mixed apparatus-use claim under *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).<br><br>Defendants also submit that the phrase "properly removed" is indefinite as impermissibly subjective. |

---

[3] Campbell, Kroger, and Meijer also asserted a fifth counterclaim, seeking a declaration that the case is "exceptional"; the Court dismissed these claims. *See* [351].

| | | | horizontally forward of the dispensing opening of the second chute) and is not indefinite. | |
|---|---|---|---|---|
| "wherein the horizontal distance that the stop structure of the second chute is offset rearwardly from the stop structure of the first chute is sufficient that one of the products removed by a user from the rack can be replaced on the rack [and]² supported [with the replaced product] [by] resting directly on a rearward portion of said forwardmost product in the first chute" | 18, 27 | | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software*. | Indefinite (which would also make dependent claims 18, 19, 24, 28, 33, and 35 indefinite as well).<br><br>Defendants submit that the clause is indefinite as an improper mixed apparatus-use claim under *IPXL Holdings*. |
| "wherein the stop structure of the first chute is located at a horizontal distance forward of, and at a vertical distance lower than, the stop structure of the second chute such that when a user removes one of the products against said stop structure of the first chute, the product must be lifted vertically out of the first chute to a withdrawal height wherein the product is at least partly horizontally in front of the stop structure of the second chute" | 27 | | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software*. | Indefinite (which would also make dependent claims 28, 33, and 35 indefinite as well).<br><br>Defendants submit that the entire clause is indefinite as an improper mixed apparatus-use claim under *IPXL Holdings*. |
| "wherein the distance forward of the stop structure of the second chute at which the stop structure of the first chute is located is sufficient that, when the product is replaced on the rack, said replaced product rests on the forwardmost product and a second product of the pair resting against the forwardmost product or on the stop structure of the second chute" | 28 | | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software*. | Indefinite.<br><br>Defendants submit that the entire clause is indefinite as an improper mixed apparatus-use claim under *IPXL Holdings*. |
| "the stop structure of said second chute being disposed above the dispensing end of said first chute a vertical distance and offset rearwardly from the stop | | 1 | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a | Indefinite (which would make dependent claims 2, 3, 9, 10, 12, 15-17 indefinite as well).<br><br>Defendants submit that the entire clause is an |

| | | | | |
|---|---|---|---|---|
| structure of said first chute a horizontal distance greater than the diameter of the products such that, when a forwardmost product of the products in the first chute is removed from the first chute by lifting said forwardmost product up to a level above the stop structure of the first chute, the forwardmost product is at least in part horizontally forward of the dispensing end of the second chute" | | | capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software*. | improper mixed apparatus-use claim under *IPXL Holdings*. |
| "wherein the horizontal distance that the stop structure of the second chute is offset rearwardly from the stop structure of the first chute is sufficient that one of the products can be placed on the rack supported with said product resting directly on a rearward portion of said forwardmost product in the first chute and in a position forward of the stop structure of the dispensing end of the second chute" | | 9 | Plain and ordinary meaning, not indefinite.<br><br>Plaintiffs submit that the clause recites functional language indicating a capability of the claimed structure rather than actual use, and thus is not indefinite under *MasterMine Software*. | Indefinite (which would make dependent claim 17 indefinite as well).<br><br>Defendants submit that the entire clause is indefinite as an improper mixed apparatus-use claim under *IPXL Holdings*. |

## B. Applicable Legal Standards

Because the claims of a patent define the invention, claim construction—the process of giving meaning to the claim language—defines the scope of the invention. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'") (citation omitted). Claim construction is a matter of law for the Court to determine. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996); *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1357–58 (Fed. Cir. 2012).

The claim construction analysis begins with the words of the claims

themselves, giving those words their ordinary and customary meaning, which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13; *see also InterDigital Commc'ns, LLC v. Int'l Trade Commc'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012). Thus, in interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc.*, 239 F.3d 1225, 1232 (Fed. Cir. 2001)(quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Importantly, the "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1315.

A "district court's construction of a patent claim, like a district court's interpretation of a written instrument, often requires the judge only to examine and to construe the document's words without requiring the judge to resolve any underlying factual disputes." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). In some cases, however, the district court "will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* Although "less significant than the intrinsic record," extrinsic evidence, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and

learned treatises," may "shed useful light on the relevant art." *See Phillips*, 415 F.3d at 1317 (citations omitted); *see also HTC Corp. v. IPCom GmbH & Co., KG,* 667 F.3d 1270, 1277 (Fed. Cir. 2012) (to find the "correct construction," courts look to the claim language, specification, and prosecution history, and "may also look to extrinsic evidence, such as dictionaries and expert opinions.")(citing *Phillips*, 415 F.3d at 1317). Before considering extrinsic evidence to construe a disputed claim, however, courts must first examine the intrinsic evidence. *Phillips*, 415 F.3d at 1317–19. If a term is ambiguous based upon the intrinsic record, reliance on extrinsic evidence may then be appropriate. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1317) ("Where the intrinsic record is ambiguous, and when necessary, we have authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'").

## C. Analysis of the Disputed Claim Terms

Although the parties have identified eight disputed claim terms, as is evidenced from the chart set forth above, their disputes fall neatly into two buckets: (1) disputes where the parties agree that the claim terms should be given their plain and ordinary meaning but disagree as to whether additional construction remains necessary to effect such meaning; and (2) disputes involving claimed indefiniteness. Mindful of the above standards, the Court turns to the parties' disputes as framed.

1.      **Disputed Claim Terms (1) and (2): Plain & Ordinary Meaning**

As to the first and second disputed terms, the parties agree that the terms should be given their plain and ordinary meaning, but they disagree as to whether any construction is required to achieve such meaning. Defendants contend that the Court must construe the claims to give them their plain and ordinary meaning; Plaintiff disagrees.

a.      **"Plurality of Generally Cylindrical Products all Having Substantially Equal Diameters"**

The first disputed term, "plurality of generally cylindrical products all having substantially equal diameters," appears in claims 17 and 27 of the '111 Patent and in claim 1 of the '326 Patent, as follows:

> A display rack comprising: A plurality of generally cylindrical products all having substantially equal diameters . . . .

[275-1] at 38, 39; [275-3] at 37. The phrase, as written, remains unambiguous.

Defendants urge the Court to construe the phrase to mean "a plurality of products having a shape of or relating to a cylinder where each of the products has approximately the same outer diameter." But that construction injects a restriction not present in the claim as written. As written, the claim requires that all products have substantially equal diameter and contemplates that the products may vary in diameter, whether within a single product or amongst the product group; nothing in the claims precludes the use of cylindrical products possessing non-uniform diameters.

The specification is consistent on this point, explaining in the description of

10

Fig. 6A that:

> the product **90** is shown as being of cylindrical form, and in this embodiment, represents cans of consumer goods. Other embodiments use a product **90** in a cylindrical form, but in the form of jar, including glass, plastic or other typical jar materials. Yet additional embodiments use products **90** of a variety of other shapes or packaging designs, otherwise capable of being received by chutes **22** and **24**. Further, the product **90** loaded into the different chutes **22** and **24** may be of a different design, whether external or internal. An external design difference could be size, shape, or material (i.e., glass jars or cans). An internal design difference may be different contents, such as different types of soup or different types of food.

[275-1] at 32. Elsewhere, the specification observes that, although Figs. 6B–6D show products "as cylindrical articles," other embodiments "use products of other shapes and sizes," including "products having a substantially cylindrical form, and those having multiple outer sides that still allow the product to rotate as it travels along chutes **22** and **24**." *Id.* at 33.

Defendants argue that this claim term is ambiguous because it does not specify where to measure the diameter in an object that may be generally cylindrical but not necessarily uniform in diameter. [240] at 9. But the claim does not require an exact diameter measurement; rather, the claim contemplates that each individual cylindrical product will have a substantially equal diameter relative to the other cylindrical products in the rack. That the claim may not disclose a specific point of diameter measurement remains irrelevant. All that is required is that the products, as a whole, possess substantially equal diameters.

Because the claim language and the specification unambiguously allow for varied shapes and sizes, the Court declines Defendants' invitation to read into the

claims a limitation requiring the product to all be uniform or the same size and shape, whether individually or collectively. *See, e.g., Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1371 (Fed. Cir. 2005) (courts "cannot construe the claim to add a limitation not present in the claim itself") (citing *Hewlett–Packard Co. v. Mustek Sys.*, 340 F.3d 1314, 1325 (Fed. Cir. 2003)). Because the claims, as written, remain unambiguous, the Court finds no construction necessary for the term "plurality of generally cylindrical products all having substantially equal diameters."

### b. "Adjacent"

The second disputed term, "adjacent," appears in claims 17 and 27 of the '111 Patent as follows:

> A display rack comprising: A plurality of generally cylindrical products all having substantially equal diameters . . . . wherein the chutes each have a stop structure supported **adjacent** the respective dispensing opening and blocking movement of the products in the chute beyond said stop structure such that the products must be elevated above the stop structure to be removed from the dispensing opening of the chute; and . . .

[275-1] at 38, 39. It also appears in claims 1, 3, 12, and 17 of the '326 Patent, as follows:

> 1. A display rack comprising: A plurality of generally cylindrical products all having substantially equal diameters . . . . wherein the chutes each have a respective stop structure supported **adjacent** the respective dispensing end that blocks forward movement of the products in the chute beyond said stop structure such that the products can be removed from the dispensing end of the chute by being elevated above the stop structure; . . .
>
> 3. A display rack in accordance with claim **2**, wherein the door has a pivoted connection support the door for pivoting movement **adjacent** the product loading opening therefore so that the door pivots about a generally horizontal axis **adjacent** a lower portion of the

product loading opening, the door in the open position extending generally forwardly from said product loading opening . . . .

12. A display rack in accordance with claim **1**, wherein the upper and lower support portions are supported between a pair of laterally spaced vertical panels, said panels each having a respective forward edge portion extending vertically **adjacent** the loading opening, and the forward edge portions each defining a respective rearward recess therein **adjacent** the dispensing ends extending rearwardly a rearward distance toward the stop structure of the second chute . . . .

17. A display rack in accordance with claim **9**, wherein the loading opening has a vertical height at least twice the diameter of the products, and wherein the first and second chutes include respective product support structures supported one above the other **adjacent** the loading opening such that products loaded through the loading opening are placed on either the support structure of the first chute or the support structure of the second chute.

[275-3] at 37–38.

The parties agree that the term "adjacent" should be given its plain and ordinary meaning, but Defendant proposes the construction "next to or near" to achieve this end. Having reviewed the patents and considered the parties' arguments, the Court finds that the term "adjacent" remains unambiguous in the claims and requires no further illumination. The term is not technical and remains straightforward in the claims and as evidenced in the figures included in the patents, whether to a layperson or the agreed POSITA. The Court remains unpersuaded that synonyms or paraphrasing add clarity or value and remains convinced that the plain and ordinary meaning of adjacent shines through, particularly to a person holding at least a bachelor's degree in industrial design or having experience in the relevant field. [4]

---

[4] Plaintiffs proffer that the technology at issue "requires knowledge and experience in the

In short, the Court agrees with Plaintiffs that disputed claim terms (1) and (2) are clear on their face and require no construction to be given their plain and ordinary meaning. The Court thus declines to construe disputed claim terms (1) and (2).

## 2. Disputed Claims Terms (3) through (8): Indefiniteness

As to the third, fourth, fifth, sixth, seventh, and eighth disputed claim terms, Defendants claim indefiniteness. Claims that are "difficult to construe are not automatically indefinite; rather a claim must be 'insolubly ambiguous' with no proper narrowing construction before it will be deemed invalid for indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.,* 286 F. Supp. 2d 925, 941 (N.D. Ill. 2001) (citing *Exxon Research and Engineering Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). The proper standard for assessing the "definiteness of claim language focuses on one skilled in the art: if such a person would understand the bounds of the claim when read in light of the specification, then the claim" passes muster. *Id.* Claims "need not be perfectly precise but must allow potential competitors some guidance in a prospective determination of whether they are infringing an existing patent." *Id.* Issued patents "are presumed valid to protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal"; as a result, courts resolve "close questions of indefiniteness in favor of the patent holder." *SmithKline,* 286 F. Supp. 2d at 941 (citing *Exxon Research and*

---

merchandising industry to meet the needs and solve various problems relating to the display and dispensing of canned food products"; accordingly, a POSITA "would have at least a bachelor's degree in industrial design and at least two years of experience in designing gravity-feed display dispensers, or five to ten years of experience in designing gravity-feed display dispensers." [250] at 11. Defendants do not dispute these characterizations.

14

*Engineering Co.,* 265 F.3d at 1380). The "party challenging patent validity on indefiniteness grounds carries the burden of proof." *Bosch Auto. Serv. Sols., LLC v. Matal*, 878 F.3d 1027, 1040 (Fed. Cir. 2017), *as amended on reh'g in part* (Mar. 15, 2018).

### a. "Properly Removed"

In addition to their general indefiniteness argument, discussed below, Defendants argue more specifically that "properly removed" is "impermissibly subjective" and thus indefinite. Defendants argue that because some claims use the term "removed," while others use "properly removed," an unknown observer must subjectively determine whether the removal of a product was, in fact, proper. [240] at 13–14. Plaintiffs disagree, arguing that "properly removed" "relates to removal of a product, and when read in the context of the rest of the claim, is clear and in no way ambiguous." [250] at 19.

Defendants' argument holds some initial appeal in light of the maxim that "different claim terms are presumed to have different meanings." *MicroStrategy Inc. v. Bus. Objects Americas*, 238 F. App'x 605, 609 (Fed. Cir. 2007); *see also CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n. 3 (Fed.Cir. 2006) ("The use of two terms in a claim requires that they connote different meanings....").

But, as Plaintiffs rightly note, the claim language must be read in context.

*E.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (claim terms must be read "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). And the complete language of the relevant limitation here undermines Defendants' indefiniteness argument.

Claim 17 recites, in full:

17. A display rack comprising: a plurality of generally cylindrical products all having substantially equal diameters; first and second product support structures defining respectively first and second chutes configured for the products to pass therethrough, each chute having a respective forward-facing product loading opening in a generally vertically disposed forward side of the display rack and configured to receive the products loaded into the chutes through the forward side, and a respective dispensing opening below the product loading opening such that the cylindrical products when placed in the product loading 65 opening proceed by force of gravity through the associated chute to the dispensing opening; the loading and dispensing openings of the second chute being situated between the loading and dispensing openings of the first chute; a door supported for movement between a substantially vertical closed position wherein said door covers the product loading openings of both of the chutes and an open position wherein the door does not cover the product loading openings and the cylindrical products can be loaded into the chutes, said door in said closed position having a forwardly disposed face capable of holding a product label or advertising; wherein the chutes each have a stop structure supported adjacent the respective dispensing opening and blocking movement of the products in the chute beyond said stop structure such that the products must be elevated above the stop structure to be **removed** from the dispensing opening of the chute; and wherein the stop structure of the second chute is below a portion of the second product support structure adjacent the loading opening of the second chute and stops the products in the second chute rearward of the loading opening of the second chute, said second chute having a clearance space above the stop structure thereof such that a forwardmost one of the products resting there-against can be elevated by a user above the stop structure and **removed** from the second chute; and the stop structure of said second chute being disposed above the dispensing opening of said first chute a vertical distance and offset rearwardly from the stop structure of said first chute a horizontal

16

> distance greater than the diameter of the products such that a forwardmost product of the products in the first chute can only be **properly removed** from the first chute, by lifting said forwardmost product up to a level wherein the forwardmost product is at least in part horizontally forward of the dispensing opening of the second chute.

[275-1] at 38 (emphasis added).

The claim plainly and explicitly explains what it means to "properly remove" a product from the first chute: "by lifting said forwardmost product up to a level wherein the forwardmost product is at least in part horizontally forward of the dispensing opening of the second chute." *Id.* Claim 17 uses "removed" in the broader sense initially, and then defines the term farther down; removal requires no subjective analysis and no discretion in the operation. As a result, the claim language is not indefinite.

### b. Indefiniteness Based Upon The Nature of the Claims

Defendants' more general challenge concerning indefiniteness relates to the nature of the claims. The Federal Circuit has instructed that "a single claim covering both an apparatus and a method of use of that apparatus is indefinite under section 112, paragraph 2." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017) (citing *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005)). The principle stems from a concern that "claiming both an apparatus and method of using the apparatus within a single claim can make it 'unclear whether infringement occurs when one creates an infringing system, or whether infringement occurs when the user actually uses the system in an infringing manner.'" *Id.* (quoting *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826

(Fed. Cir. 2016); *IPXL Holdings*, 430 F.3d at 1384).

Defendants argue that the asserted claims "all recite a display rack having a particular horizontal distance between the stop structure of the first chute and the stop structure of the second chute" and, "while directed to a 'display rack,' also positively recite removal of a product from the display rack by a user and replacement of the product by that user by putting it back on top of the next-dispensed product." [240] at 15. As such, Defendants claim, a "display rack does not fall within the scope of these claims unless and until a user removes a product from the rack and/or returns it to the rack as recited," and the "requirement of user action in an independent method step, in claims directed to an apparatus such as the claimed display rack of the Asserted Patents, renders those claims indefinite" under *IPXL Holdings*. *Id.* at 16–17. In response, Plaintiffs argue that the claims at issue do not cover both an apparatus and a method, but instead constitute straightforward apparatus claims, which may (and do) "properly incorporate functional language regarding the capabilities of a device." [250] at 6. The Court agrees.

*MasterMine Software* remains instructive and dispositive. There, the Federal Circuit cautioned that "while a claim directed to both a method and an apparatus may be indefinite, 'apparatus claims are not necessarily indefinite for using functional language.'" 874 F.3d at 1313 (quoting *Microprocessor Enhancement Corp. v. Tex. Instruments Inc. (MEC)*, 520 F.3d 1367, 1375 (Fed. Cir. 2008)). The asserted patents in *MasterMine* disclosed "methods and systems that allowed a user to easily mine and report data maintained by a customer relationship management

application"; the district court found several claims of the asserted patents to be "invalid for indefiniteness for introducing method elements into system claims." 874 F.3d at 1313. The Federal Circuit disagreed, finding that the claims at issue were "simply apparatus claims with proper functional language." *Id.* In so holding, the court reviewed several of its decisions applying *IPXL Holdings*, including *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270 (Fed. Cir. 2012) and *UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816 (Fed. Cir. 2016).

*HTC* involved apparatus claims that also included functional language; the court held that the independent claim did not "recite a mobile station and then have the mobile status perform the six enumerated functions" but "merely established those functions as the underlying network environment in which the mobile station operates." *MasterMine Software*, 874 F.3d at 1315. So too in *UltimatePointer*; there, the claims at issue claimed "a handheld device including: an image sensor, said image sensor generating data and other similar generating data limitations," and the court held that they made clear "that the generating data limitation reflects the capability of that structure rather than the activities of the user," and "do not reflect an attempt to claim both an apparatus and a method, but instead claim an apparatus with particular capabilities." *MasterMine Software*, 874 F.3d at 1315 (citing *UltimatePointer*, 816 F.3d at 827–28). So too here: the challenged claims claim an apparatus (a multi-chute gravity feed dispenser display) with particular capabilities (including capabilities relating to the loading and removal of products).

Initially, the plain language of the asserted claims recites "a display rack";

none of the asserted claims recites a method, and indeed, the word method does not appear in the claims at all. In particular, in the '111 Patent, claims 17 and 27, the only asserted independent claims, recite a display rack with certain functional and structural specifications and limitations. *See* [275-1] at 38 ("17. A display rack comprising: . . . ."); *id.* at 39 ("27. A display rack comprising: . . . ."). Even the language directed toward removing products relates to the structure necessary to allow such functionality:

> the stop structure of said second chute being disposed above the dispensing opening of said first chute a vertical distance and offset rearwardly from the stop structure of said first chute a horizontal distance greater than the diameter of the products such that a forwardmost product of the products in the first chute can only be properly removed from the first chute, by lifting said forwardmost product up to a level wherein the forwardmost product is at least in part horizontally forward of the dispensing opening of the second chute.

[275-1] at 38. The claim recites a specific display rack structure that allows for certain functionality, and the claim would be infringed if the structure were designed as specified to allow for such functionality; no method is claimed or required. As in *MasterMine Software*, the "active verbs" in claim 17—removed, lifting—represent "permissible functional language used to describe the capabilities" of the display rack. 874 F.3d at 1315. And, as in *MasterMine Software*, the claims make clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed display rack. 874 F.3d at 1316.

Claim 18 depends from claim 17 and recites the display rack of claim 17 with certain additional structural limitations:

> 18. The display rack of claim **17** wherein the horizontal distance that

> the stop structure of the second chute is offset rearwardly from the stop structure of the first chute is sufficient that one of the products removed by a user from the rack can be replaced on the rack supported with the replaced product resting directly on a rearward portion of said forward-most product in the first chute.

[275-1] at 38. The additional limitations relate to the structure of the display, designed to further the functionality. And the "active verbs" represent "permissible functional language used to describe the capabilities" of the display rack.

Claim 19, in turn, depends from claim 18 and recites the display rack in claim 18 with certain additional limitations relating to the product support structures— again, the limitations relate to the structure and function of the display, not a method for using the display. *See* [275-1] at 38 ("19. The display rack of claim 18 wherein the first and second product support structures each includes . . . ."). So too claim 24, which recites the "display rack of claim **19,** and further comprising positioning elements including protrusions extending from the panels into the chutes at a height above the support portions that is in a middle portion of ends of the products rolling on said support portions." [275-1] at 39. The added limitation relates to functionality and the structure of the display, not a method for using the display.

Finally, claims 28, 33 and 35 all depend from claim 27, reciting the claimed display rack with additional structural and functional limitations. *See* [275-1] at 39– 40 ("28. The display rack of claim **27** wherein the distance forward of the stop structure of the second chute at which the stop structure of the first chute is located is sufficient that, when the product is replaced on the rack, said replaced product rests on the forwardmost product and a second product of the pair resting against the

forwardmost product or on the stop structure of the second chute."); ("33. The display rack of claim **27** wherein the loading openings of the chutes are directly above one another, the rack further has a door supported on said panels for movement into and out of a vertical closed position . . . ."); ("35. The display rack of **27**, wherein the stop structure of the second chute comprises a pair of stop members each extending into the chute from a respective panel and defining therebetween a space permitting a user to grasp a one of the products resting against the stop structure o the second chute and remove it from the rack.").

The asserted claims of the '326 patent similarly pass muster under *IPXL Holdings* and remain directed to an apparatus, with functional limitation language. Claim 1, the only asserted independent claim, recites:

> **1.** A display rack comprising: a plurality of generally cylindrical products all having substantially equal diameters; first and second chutes supporting the products passing therethrough by rolling or dropping impelled by force of gravity, a forward side of the display rack having a forward-facing product loading opening therein, and both chutes communicating with and extending generally rearwardly from the forward-facing product loading opening and receiving the products loaded into the chutes through the product loading opening, and each chute having a respective dispensing end below the product loading opening such that the cylindrical products when placed in the product loading opening proceed by force of gravity through one of the chutes to the dispensing end thereof; the dispensing end of the second chute being situated between the product loading opening and the dispensing end of the first chute; wherein the chutes each have a respective stop structure supported adjacent the respective dispensing end that blocks forward movement of the products in the chute beyond said stop structure such that the products can be removed from the dispensing end of the chute by being elevated above the stop structure; and wherein the stop structure of the second chute stops the products in the second chute rearward of the product loading opening, said second chute having a clearance space above the stop structure thereof such that a forwardmost one of the products resting thereagainst can be elevated by

a user above the stop structure and removed from the second chute; and the stop structure of said second chute being disposed above the dispensing end of said first chute a vertical distance and offset rearwardly from the stop structure of said first chute a horizontal distance greater than the diameter of the products such that, when a forwardmost product of the products in the first chute is removed from the first chute by lifting said forwardmost product up to a level above the stop structure of the first chute, the forwardmost product is at least in part horizontally forward of the dispensing end of the second chute.

[275-3] at 37. As with claim 17 of the '111 Patent, the active verbs in claim 1—rolling, dropping, removed, lifting—do not transform the claim into an impermissible mixed apparatus/use claim, but simply represent permissible functional language used to describe the capabilities of the claimed display rack.

Claims 2, 9, 10, 12, and 15 depend directly from claim 1; claim 3 depends from claim 2 (and thus indirectly from claim 1); claim 16 depends from claim 15 (and thus indirectly from claim 1); and claim 17 depends from claim 9 (and thus indirectly from claim 1), and each dependent claim evolves structural limitations directed to functionality. *See* [275-3] at 37–38 ("**2.** A display rack in accordance with claim **1**, and further comprising a door supported for movement between a substantially vertical closed position wherein said door covers the product loading opening and an open position wherein the door does not cover the product loading opening and the cylindrical products can be loaded into the chutes, said door in said closed position having a forwardly disposed face capable of holding a product label or advertising."); ("**3.** A display rack in accordance with claim **2** wherein the door has a pivoted connection supporting the door for pivoting movement adjacent the product loading opening thereof so that the door pivots about a generally horizontal axis adjacent a

23

lower portion of the product loading opening, the door in the open position extending generally forwardly from said product loading opening, the door when in the open position being retained therein by force of gravity while products are loaded into the product loading opening."); ("**9.** A display rack in accordance with claim **1,** wherein the horizontal distance that the stop structure of the second chute is offset rearwardly from the stop structure of the first chute is sufficient that one of the products can be placed on the rack supported with said product resting directly on a rearward portion of said forwardmost product in the first chute and in a position forward of the stop structure of the dispensing end of the second chute."); ("**10.** A display rack in accordance with claim **1,** wherein the first and second chutes each comprise respective product support structures that each includes a respective inclined, generally straight upper support portion configured so as to support some of the products rolling thereon in the associated chute, said upper support portion extending downward and rearward from the product loading opening to a rearward terminal end of said upper support portion, and a respective lower support portion located below the respective upper support portion and extending down- ward and forward toward the dispensing opening of the associated chute below the upper support portion, said lower support portion having an upwardly curving rear portion extending curvingly upwardly rearward of the terminal end of the respective upper support portion, and an inclined generally straight portion extending downwardly and forwardly from the rear portion such that at least some of the products passing

24

through the associated chute roll down the upper support portion to the terminal end thereof and then descend to the lower support portion and roll forwardly thereon toward the dispensing end of the associated chute."); ("**15.** A display rack in accordance with claim **1**, wherein the chutes have sloping support portions on which the products 15 roll when moving therethrough, and lateral walls engageable with the products passing through the chutes, said walls having positioning elements including protrusions extending from the lateral walls into the chutes at a height above the support portions that is generally in a middle portion of ends of the products rolling on said support portions."); ("**16.** A display rack in accordance with claim **15**, wherein the stop structure of the second chute comprises a pair of stop members each extending into the chute from a respective lateral wall of the second chute, said stop members defining therebetween a space through which a user can grasp one of the products when resting against the stop structure of the second chute and remove said product from the rack."); and ("**17.** A display rack in accordance with claim **9**, wherein the loading opening has a vertical height at least twice the diameter of the products, and wherein the first and second chutes include respective product support structures supported one above the other adjacent the loading opening such that products loaded through the loading opening are placed on either the support structure of the first chute or the support structure of the second chute.").

By their plain language, the claims remain directed to an apparatus; they do not claim any method and do not run afoul of *IXPL Holdings*. As with the '111

patent, the claims of the '326 patent clearly inform those skilled in the art that infringement occurs when one makes, uses, offers to sell, or sells the claimed display rack.

The remaining intrinsic evidence supports the Court's finding concerning the nature of the claims. The patents' specifications both point to an apparatus, not a method. The patents are entitled "Multi-Chute Gravity Feed Dispenser Display" and say nothing about a method. The abstracts and summary of the invention sections likewise point to an apparatus, not a method, defining the invention as "a set of panels having chutes therebeteween. The chutes being defined by curvilinear rails on such panels. The curvilinear rails having stops thereon for stopping the products for viewing." [275-1] at 2, 30; [275-3] at 2, 30. So too the "background of the invention" section, which states: "the present invention relates to dispenser racks and displays therefore, and more particularly, to a compact, easy to assemble, easy to load and unload multiple chute dispenser with an integrated display." [275-1] at 30; [275-3] at 30. All of the figures in the patents depict displays. [275-1] at 2, 4–29; [275-3] at 2, 4–29.

Based upon the claim language and the specifications, the asserted claims are not mixed apparatus/use claims, but apparatus claims with functionally-limiting language. As a result, the Court rejects Defendants' indefiniteness argument.

## D.    Conclusion

For the reasons explained above, the Court finds that disputed claim terms (1) and (2) require no further construction. The Court further finds that disputed claim

terms (3) through (8) constitute apparatus claims with functional language, and not impermissible mixed apparatus/use claims. As a result, the Court rejects Defendants' indefiniteness claim.

Dated: January 24, 2024

Entered:

John Robert Blakey
United States District Judge