

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OCT 1 7 2025

JUDGE GEORGIA N. ALEXAKIS
UNITED STATES DISTRICT COURT

GAMON PLUS, INC. AND GAMON
INTERNATIONAL, INC.,

    *Plaintiffs,*

v.

THE CAMPBELL'S COMPANY F/K/A
CAMPBELL SOUP COMPANY, MEIJER,
INC., THE KROGER CO., AND TRINITY
MANUFACTURING, L.L.C.,

    *Defendants.*

No. 15 CV 8940

Judge Georgia N. Alexakis

## FINAL INSTRUCTIONS TO THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

In this case the parties are all corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations.

A stipulation is an agreement between both sides that certain facts are true. You must treat the stipulations as having been proved for the purpose of this case.

Some of the exhibits admitted into evidence have portions of that have been redacted or excerpted. That happened because the Court determined that those portions you cannot see are not relevant or not important to the issues you have been asked to decide in the case so that you do not need to see them. When you're presented with a document that may have portions of it redacted or excerpted, don't focus on what's redacted and don't try to guess what's been blacked out or excerpted. Focus on what's there and visible.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, internet or television reports you may have seen or heard. Such reports are not evidence and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

The way the exhibits are named is not relevant and should not be considered in determining the weight to give the exhibits, if any.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, <u>direct evidence</u> that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." <u>Circumstantial evidence</u> that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying; and

- the reasonableness of the witness's testimony in light of all the evidence in the case.

During the trial, certain testimony was presented to you by the reading of depositions and by video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

You may consider statements given by certain witnesses under oath before trial as evidence of the truth of what he or she said in the earlier statements, as well as in deciding what weight to give his or her testimony.

In considering a prior inconsistent statement, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

It is proper for a lawyer to meet with any witness in preparation for trial.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true. This is a higher burden of proof than a preponderance of the evidence or "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about those aspects of patent law that specifically relate to this case.

Some issues in patent cases are determined by considering a "person of ordinary skill in the field of the invention," a term that I will use later in these instructions. In this case, the field of the invention is gravity feed dispensers.

It is up to you to decide the level of ordinary skill. In making this decision, you should consider all the evidence, including:

- the levels of education and experience of persons working in the field of the invention;

- the types of problems encountered in the field of the invention; and

- the sophistication of the technology in the field of the invention.

The claims of a patent are the numbered paragraphs at the end of the patent. The claims describe what the patent owner may prevent others from doing.

Claims are usually divided into parts, called "limitations" or "requirements." For example, a claim that covers the invention of a table may describe the tabletop, four legs and glue that holds the legs and the tabletop together. The tabletop, legs and glue are each a separate limitation or requirement of the claim.

This case concerns claims 17, 18, 19, 24, 25, 27, 28, 33 and 35 of the '111 patent and claims 1, 2, 3, 9, 10, 12, 15, 16 and 17 of the '326 patent. I will refer to these as the asserted claims. Defendants infringed all asserted claims. However, Defendants contend that these claims are invalid.

In deciding a challenge to the validity of a patent, you must compare the claims to the asserted prior art. In reaching your determination with respect to invalidity, you must consider each claim of the patents separately.

The owner of a patent has the right to prevent others from making, using, offering for sale, and selling the invention covered by the patent. Any of these acts constitute infringement.

When deciding whether a patent is valid, you must use the ordinary meanings of claim terms when you decide whether the patent is invalid.

There are two types of patent claims, independent claims and dependent claims. An independent claim stands on its own and does not refer to any other claim of the patent. A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the requirements of the other claim to which it refers, as well as the requirements in the dependent claim itself, even though it does not repeat those requirements of the other claims.

Earlier I described a hypothetical patent claim for a table that described the tabletop, four legs, and glue to hold the legs and tabletop together. That is an example of an independent claim, which I will call claim 1. In that same hypothetical patent, a dependent claim, which I will call claim 2, might state, "the table of claim 1, where the tabletop is square." In this situation, in order to infringe dependent claim 2, it is not enough for Plaintiff to prove that Defendants made a table with a square tabletop – Plaintiff must also prove, as stated in claim 1, that the table has four legs and glue to hold the legs and tabletop together.

In this case, claims 17 and 27 of the '111 patent and claim 1 of the '326 patent are independent claims. The remaining claims of the '111 and '326 patent are dependent claims.

When a patent claim uses the term "comprising," it means that the invention includes the listed requirements, but is not limited to those requirements.

Defendants Campbell, Kroger, and Meijer directly infringed the asserted claims. What that means is that every requirement of those claims is found in Defendants' product, exactly as it is described in the claim.

Defendant Trinity infringed the asserted claims by inducing or contributing to infringement by Campbell, Kroger, and Meijer. What that means is that Trinity knew of Plaintiff's patents, and (i) acted, encouraged, or instructed another Defendant to use the IQ Maximizer systems in a manner that infringed Plaintiff's Patents and knew or should have known its acts would cause another Defendant to infringe Plaintiff's patents, and the "IQ Maximizer" systems were especially made for a use that would infringe Plaintiff's patents, or (ii) sold or supplied a component that forms a significant part of the patented invention and that is not a commonly available item with other uses, and knew the "IQ Maximizer" systems were especially made for a use that would infringe Plaintiff's patents.

Defendants have challenged the validity of claims 17, 18, 19, 24, 25, 27, 28, 33 and 35 of the '111 patent and claims 1, 2, 3, 9, 10, 12, 15, 16 and 17 of the '326 patent on the ground that they are obvious.

Each of the claims of the '111 and '326 patents is presumed to be valid. For that reason, Defendants have the burden of proving invalidity by clear and convincing evidence, which I defined earlier.

You must evaluate and determine separately the validity of each claim of the patents.

In addressing some of Defendants' invalidity defenses, you will have to consider what is disclosed in the "prior art."

Before you may consider any disputed item to be prior art, Defendants must prove by clear and convincing evidence that the item prior art. A disputed reference is not prior art unless Defendants prove by clear and convincing evidence that the reference was any one of the following:

· known or used by someone else in the United States before the date of invention, unless the knowledge or use was private or secret;

· in public use or on sale or offered for sale in the United States more than one year before the patent application was filed;

· patented by someone else before the date of the invention or more than one year before the patent application was filed; or

· described in a publication before the date of the invention or more than one year before the patent application was filed.

The Defendants assert that the following items are prior art:

1. Union Carbide Corporation Eveready Dispenser
2. Gamon Minute Maid Dispenser
3. U.S. Patent No. 533,963 ("Northcutt")

26

**(a)      "Date of Invention"**

The term "date of invention," as used in the previous instruction, means August 20, 2002, the filing date of U.S. Provisional Patent Application No. 60/404,648 to which Plaintiff's patents claim priority, unless Plaintiff proves by a preponderance of the evidence that the invention was conceived and actually reduced to practice at an earlier date. An invention as described in a patent claim is "conceived" when the inventor has formed the idea of how to make and use every aspect of the invention. An invention is "actually reduced to practice" when it is made or when the inventor determines that it will work for its intended purpose.

To establish an earlier date, Plaintiff must prove that the invention was actually reduced to practice at an earlier date, in which case that date is the invention date, or the inventor conceived the invention before the date of the prior art and used reasonable diligence before the date of the prior art to reduce the invention to practice, in which case the date of the invention is the date when the invention was conceived. Reasonable diligence means the inventor worked on a reasonably continuous basis to reduce the invention to practice.

**(b)      "On Sale"**

An item is "on sale," as that term is used in these instructions, if it was the subject of a commercial offer for sale in the United States more than one year before the patent application date, and if, at that time, it was ready for patenting. A single offer to sell, primarily for profit rather than for experimental purposes, is sufficient, even if no actual sale was made.

**(c)      Public Use**

An invention is considered to have been in public use if it was:

(1)      accessible to the public or commercially exploited in the United States; and

(2)      ready for patenting, which means that it was constructed and there was reason to believe that the invention would work for its intended purpose.

Defendants contend that claims 17, 18, 19, 24, 25, 27, 28, 33 and 35 of the '111 patent and claims 1, 2, 3, 9, 10, 12, 15, 16 and 17 of the '326 patent are invalid because they are obvious.

In order to show that the claimed invention is obvious, Defendants must prove by clear and convincing evidence as to the particular claim you are considering that at the time the invention was made, the claimed invention would have been obvious to a person having ordinary skill in the art who was aware of all the prior art existing at that time.

In deciding obviousness, you should put yourself in the position of a person with ordinary skill in the field at the time the invention was made. You must not use hindsight; in other words, you may not consider what is known now or what was learned from Plaintiff's patents. In addition, you may not use Plaintiff's patents as a roadmap for selecting and combining items of prior art.

In making your decision regarding obviousness, you are to consider each of the following factors:

1.      The scope and content of the prior art. You may consider prior art that is from the same field of endeavor, regardless of the problem addressed, or that is reasonably pertinent to the particular problem the inventor was trying to solve.

2.      Any differences between the prior art and the invention in the patent claim that you are considering.

3.      The level of ordinary skill in the field of the invention at the time the invention was made.

4.      Additional factors, if any, that indicate that the invention was obvious or not obvious. I will define them in the next instruction.

As I stated in the previous instruction, in deciding obviousness you should consider whether any of the following are true, which if so may indicate the invention was not obvious.

1. Has the invention achieved commercial success? If so, is that success based on the invention itself, rather than on advertising, promotion, sales tactics, or features of the product other than those found in the claimed invention?

2. Has the invention satisfied a long-felt need for a solution to the problem facing the inventors at the time the invention was made?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the invention?

5. Did the invention achieve unexpected superior results over the prior art?

6. Did others in the field or the Defendants praise the invention or express surprise at the making of the invention?

7 Did others seek or obtain a license to the '111 patent and the '326 patent?

8. Did the inventor, in making the invention, proceed contrary to accepted wisdom or guidance from the prior art?

Not all of these factors may be present. No single factor is more or less important than the others.

The fact that each of the elements of the claim may be found in prior art is not enough, by itself, to prove obviousness. In determining whether Defendant has proved obviousness, you may combine multiple items of prior art only if a person who has ordinary skill in the field would have been motivated to combine them when trying to solve the problem that is addressed by the claimed invention and would have had a reasonable expectation of success in doing so. In deciding this, you may consider, among other things, any of the following factors:

1.     What the prior art suggests about combining;

2.     The knowledge possessed by persons who have ordinary skill in the field of the invention; and

3.     The effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue.

Defendants infringed all Asserted Claims. If you find that Defendants have proven by clear and convincing evidence that the Asserted Claims of the '111 patent and '326 patent are all invalid, then Plaintiff is not entitled to any damages. But if you find that Defendants infringed any valid claim of either patent, you are to award Plaintiff damages adequate to compensate Plaintiff for that infringement.

The damages you award are intended to compensate the patent holder, not to punish the infringer. Plaintiff must prove damages by a preponderance of the evidence.

The damages period in this case begins on September 9, 2014, the issue date of the '111 Patent, and ends on June 20, 2023, the date the asserted patents expired. The fact that the patents have expired is not relevant to infringement or validity. It is also not relevant to damages other than setting the end of the damages period. Plaintiff is only seeking damages for the period before the date of expiration and is entitled to seek damages for the period its patents were in force.

Plaintiff seeks damages in this case in the form of a reasonable royalty.

A royalty is a payment made to the owner of a patent by another entity so that it can make; use; sell; or offer for sale the patented invention. A "reasonable royalty" is the amount Plaintiff and Defendants would have agreed upon as a royalty at the time Defendants' infringement began.

In determining a reasonable royalty, you should assume that Plaintiff would have been willing to allow Defendants to make; use; sell; or offer for sale the patented invention and that Defendants would have been willing to pay Plaintiff to do so. You should take into account what Plaintiff's and Defendants' expectations would have been if they had negotiated a royalty and had acted reasonably in their negotiations. You should assume that both Plaintiff and Defendants would have believed that Plaintiff's patents were valid and infringed. You should also assume that Defendants would have been willing to pay, and Plaintiff would have been willing to accept, the reasonable royalty they negotiated. This is not an exact science. The evidence may support more than one reliable method for estimating a reasonable royalty. Your role is to determine what reasonable royalty Plaintiff and Defendants would have agreed upon if they had negotiated in this manner, not just what either Plaintiff or Defendants would have preferred.

In determining a reasonable royalty, you may consider the following factors, in addition to any others that are shown by the evidence. You may find that some of these factors are not relevant to the hypothetical negotiation and that certain factors would impact the hypothetical negotiation more than others.

1. Royalties that others paid to Plaintiff to be allowed to make; use; sell; or offer for sale the patented invention;

2. Royalties that Defendants paid to others for comparable patents;

3. The nature and scope of the license;

4. Whether Plaintiff had a policy of licensing or not licensing the patents;

5. Whether Plaintiff and Defendants are competitors;

6. Whether use of the patented invention helps to make sales of other products or services;

7. The duration of the patent and the term of the license;

8. Whether the patented invention is commercially successful, as well as its profitability;

33

9. The advantages of using the patented invention over products not covered by the patent;

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

11. The extent of Defendants' use of the patented invention and the value of that use to Defendants;

12. Any royalty amounts that are customary for similar or comparable patented inventions;

13. The portion of the profit on sales that is due to the patented invention, as opposed to other factors, such as unpatented elements or processes, features, or improvements developed by Defendants;

14. Expert opinions regarding what would be a reasonable royalty.

Plaintiff is required to prove the amount of a reasonable royalty to a reasonable probability and may not recover amounts that are speculative, only possible, or based on guesswork. However, mathematical certainty is not required

If you find that any damages are owed to Plaintiff, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or the patent holder's size or market position. A royalty compensating the patent holder for damages must reflect only the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.

When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or the patent holder's size or market position.

Plaintiff bears the burden of proving the incremental value of the patented features. This requires Plaintiff to show what portion of the accused product's value is attributable to the patented technology versus unpatented components. Plaintiff must give evidence tending to separate or apportion damages between the patented features and the unpatented features, and such evidence must be reliable and tangible, and not conjecture or speculation. If you decide Plaintiff is entitled to a reasonable royalty, you must account for the relative value of the new and inventive elements of Plaintiff's patented racks in comparison to the unpatented elements. In other words, you may reward Plaintiff only for its innovation: the incremental benefit bestowed by only the new elements of a patent claim, taken as a whole.

On the other hand, if demand for the entire accused product depends only on the claimed features, then apportionment is not necessary even though the accused product includes non-patented features.

A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty." Either method is designed to compensate the patent holder based on the infringer's use of the patented technology. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case.

Reasonable royalty awards can take the form of a lump sum payment. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. When a lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales.

Reasonable royalty awards may also take the form of a running royalty based on the revenue from or the volume of sales of licensed products. A running royalty can be calculated, for example, by multiplying a royalty base by a royalty rate, or by multiplying the number of infringing products or product units sold by a royalty amount per unit. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

A reasonable royalty is not to be separately calculated against each successive infringer. Once full recovery is obtained from one infringer with respect to a particular infringing product, at most nominal additional damages may be awarded against another with respect to the same product.

Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. This does not require that the agreements involve the exact same circumstances or context as the hypothetical negotiation at issue. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the court security officer, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GAMON PLUS, INC. and GAMON
INTERNATIONAL, INC.,

      *Plaintiffs*,

    v.

THE CAMPBELL'S COMPANY
F/K/A CAMPBELL SOUP
COMPANY, MEIJER, INC., THE
KROGER CO., and TRINITY
MANUFACTURING, L.LC.,

      *Defendants*.

Case No. 15-cv-8940

Judge Georgia N. Alexakis

JURY TRIAL DEMANDED

## **VERDICT FORM**

In answering the following questions and completing this Verdict Form you are to follow all the instructions I have given you in the Court's Final Jury Instructions. Your answers to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the Final Jury Instructions. You should refer to and consider the Final Jury Instructions as you answer these questions in this Verdict Form.

As used in this Verdict Form, the following terms have the following meanings:

"Gamon" or "Plaintiff" refers to Gamon Plus, Inc. and Gamon International, Inc.

"Campbell" refers to Defendant The Campbell's Company f/k/a Campbell Soup Company.

"Trinity" refers to Defendant Trinity Manufacturing, LLC.

"Kroger" refers to Defendant The Kroger Co.

"Meijer" refers to Defendant Meijer, Inc.

"Defendants" refers collectively to Campbell, Trinity, Meijer, and Kroger.

The '326 Patent refers to U.S. Patent No. 9,144,326.

The '111 Patent refers to U.S. Patent No. 8,827,111.

"The Asserted Patents" refers collectively to U.S. Patent No. 9,144,326 and U.S. Patent No. 8,827,111.

"Asserted Claims of the '111 Patent" refers to Claims 17-19, 24-25, 27-28, 33 and 35 of the '111 Patent.

"Asserted Claims of the '326 Patent" refers to Claims 1-3, 9-10, 12, and 15-17 of the '326 Patent.


**IT IS VERY IMPORTANT THAT YOU FOLLOW THE INSTRUCTIONS PROVIDED IN THIS VERDICT FORM.**


**PLEASE READ THEM CAREFULLY AND ENSURE THAT YOUR VERDICT COMPLIES WITH THEM.**

2

## QUESTION NO. 1: INVALIDITY

Did Defendants prove, by clear and convincing evidence, that any of the following Asserted Claims are invalid?

**Please check "Yes" or "No" for each listed Asserted Claim in the space provided. "Yes" is a finding for Defendants. "No" is a finding for Plaintiff.**

### '111 Patent:

'111 Patent, Claim 17:     Yes _____ No _____

'111 Patent, Claim 18:     Yes _____ No _____

'111 Patent, Claim 19:     Yes _____ No _____

'111 Patent, Claim 24:     Yes _____ No _____

'111 Patent, Claim 25:     Yes _____ No _____

'111 Patent, Claim 27:     Yes _____ No _____

'111 Patent, Claim 28:     Yes _____ No _____

'111 Patent, Claim 33:     Yes _____ No _____

'111 Patent, Claim 35:     Yes _____ No _____

**'326 Patent:**

  '326 Patent, Claim 1:  Yes _____ No _____

  '326 Patent, Claim 2:  Yes _____ No _____

  '326 Patent, Claim 3:  Yes _____ No _____

  '326 Patent, Claim 9:  Yes _____ No _____

  '326 Patent, Claim 10:  Yes _____ No _____

  '326 Patent, Claim 12:  Yes _____ No _____

  '326 Patent, Claim 15:  Yes _____ No _____

  '326 Patent, Claim 16:  Yes _____ No _____

  '326 Patent, Claim 17:  Yes _____ No _____

**Please turn to the next page.**

**If you Answered "NO" (for Plaintiff) for at least one claim, please turn to Question 2 (damages) on the next page. Otherwise, please proceed to the last page (signature).**

## QUESTION NO. 2: DAMAGES

### Question 2A:

What is the amount of damages that you find Plaintiff has proven by a preponderance of the evidence for Campbell's infringement?

$_____

### Question 2B:

If you find that Plaintiff has proven by a preponderance of the evidence additional damages for Trinity's infringement not already included in your damages award for Campbell's, what is the amount of additional damages that you find Plaintiff has proven for Trinity's infringement?

$_____

### Question 2C:

If you find that Plaintiff has proven by a preponderance of the evidence additional damages for Kroger's infringement not already included in your damages award for Campbell's, what is the amount of additional damages that you find Plaintiff has proven for Kroger's infringement?

$_____

**Question 2D:**

If you find that Plaintiff has proven by a preponderance of the evidence additional damages for Meijer's infringement not already included in your damages award for Campbell's, what is the amount of additional damages that you find Plaintiff has proven for Meijer's infringement?

$_____

**Please turn to the next page.**

You have now reached the end of the Verdict Form and should review it to ensure it accurately reflects your unanimous determinations. Each juror should sign and date this Verdict Form in the spaces below. Once this is done, please notify the Court Security Officer that you have reached a verdict. The jury foreperson should keep the Verdict Form and bring it when the jury is brought back to the court room.

Date: _____

_____
Foreperson

_____        _____
Juror                                                                Juror

_____        _____
Juror                                                                Juror

_____        _____
Juror                                                                Juror

_____
Juror